RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

FRANK FOSTER, on behalf of himself and all
others similarly situated, et al.,
                    *Plaintiffs-Appellants*,

                                                    No. 12-3107

          v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,
                    *Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:08-cv-20—Edmund A. Sargus, Jr., District Judge.

Argued: January 23, 2013

Decided and Filed: March 21, 2013

Before: GUY, SUTTON, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Matthew H. Morgan, NICHOLS KASTER, PLLP, Minneapolis, Minnesota,
for Appellant. James J. Oh, LITTLER MENDELSON, P.C., Chicago, Illinois, for
Appellee. **ON BRIEF:** Matthew H. Morgan, Paul J. Lukas, Reena I. Desai, Rebekah L.
Bailey, Adam W. Hansen, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for
Appellant. James J. Oh, LITTLER MENDELSON, P.C., Chicago, Illinois, Andrew J.
Voss, LITTLER MENDELSON, P.C., Minneapolis, Minnesota, Tracy Stott Pyles,
LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellee.

_____

## OPINION
_____

RALPH B. GUY, JR., Circuit Judge. Plaintiffs, ninety-one current and former
special investigators (SIs) employed by Nationwide Mutual Insurance Company, appeal
from the judgment entered against them with respect to their collective claims that

1

Nationwide improperly classified SIs as administrative employees exempt from the overtime requirements of the Fair Labor Standards Act (FLSA) (29 U.S.C. §§ 207 and 213(a)(1)) and analogous provisions of New York and California law. Plaintiffs challenge the partial summary judgment entered in favor of Nationwide, *Foster v. Nationwide Mut. Ins. Co.*, 695 F. Supp. 2d 748 (S.D. Ohio 2010), as well as resolution of the remaining issues in favor of Nationwide following a seven-day bench trial, *Foster v. Nationwide Mut. Ins. Co.*, No. 08-CV-020, 2012 WL 407442 (S.D. Ohio Jan. 5, 2012) (unpublished). Finding no error in the district court's careful and thorough analysis, we affirm.

## I.

Nationwide is an insurance company in the business of providing a wide range of insurance coverage, including vehicle, property, commercial, and life insurance products. Its corporate structure includes a Special Investigation Unit (SIU) that is divided into geographical regions, each of which is led by an SIU Director who supervises a group of SIU managers who, in turn, supervise the SIs. The SIU operates alongside the claims-adjusting units, which are likewise led by a director who oversees claims managers and claims adjusters. As Nationwide's internal document described it, the SIU "'exists to service its corporate partners by providing the highest quality and expedient investigative, informational and consulting services to detect and deter fraud and to support other objectives of Nationwide.'" *Foster*, 2012 WL 407442, at *2 (quoting Joint Ex. 2 at 1). The SIU's work is aimed at reducing the number of non-meritorious claims that are paid in order to keep Nationwide's insurance products competitively priced.

About one percent of the roughly one million claims filed on Nationwide policies each year are identified by claims adjusters as presenting certain "indicators of fraud." Those claims are referred to the SIU and, if accepted, are assigned to an SI for investigation. SIs are well compensated with an average annual salary of $75,000; are generally experienced investigators with prior background in law enforcement or insurance claims; and, as the evidence established at trial, "spend the majority, if not an

overwhelming majority, of their time carrying out investigations of suspicious claims." *Id*. at \*19.  Due to various state law licensing requirements for claims adjusters (CAs) and concerns about possible litigation, Nationwide precludes its SIs from actually adjusting such claims or making decisions whether to pay or deny the claims.  Together the SI and CA develop a plan of action for the investigation, which the SI then conducts relatively free from direct supervision but subject to guidelines and strict auditing standards.  The SIs' primary duty is conducting the investigations, but the parties disputed "the degree of autonomy, discretion, and judgment exercised by the SIs in carrying out the various tasks that comprise a given investigation and the level of significance that should be attributed to the various tasks." *Id*. at \*3.

The FLSA requires overtime pay for each hour worked in excess of forty hours per week, but exempts "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Congress did not define these exemptions, but delegated authority to the Department of Labor (DOL) to issue regulations to define and delimit these terms.  *Id*.; *see Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012).  The current regulations, reissued and streamlined with minor amendments in 2004, provide that the administrative exemption covers employees:

> (1) Compensated . . . at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  The exemption is to be narrowly construed against the employer, and the employer bears the burden of proving each element by a preponderance of the evidence. *Renfro v. Indiana Mich. Power Co. (Renfro II)*, 497 F.3d 573, 575-7 (6th Cir. 2007).

In deciding the motions for summary judgment, the district court addressed all three elements of the administrative exemption. The first element is unquestionably met in this case, and plaintiffs do not argue otherwise. The district court further found that whatever the precise scope of the SIs' primary duty, the second element was also met because the SIs' primary duty is the performance of work "directly related" to the "general business operations" of Nationwide. *Foster*, 695 F. Supp. 2d at 755-58. The district court denied summary judgment with respect to the third element, finding that the evidence in the record presented a genuine issue of material fact whether the SIs' "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3); *see Foster*, 695 F. Supp. 2d at 758-63. Finally, the district court found that these conclusions applied equally to those claims brought under New York and California law.[1]

After further discovery, plaintiffs waived their right to jury trial and the district court presided over a bench trial that included considerable focus on the work performed by Nationwide's SIs. Since the evidence admitted at trial—which included the testimony of more than fifteen witnesses and voluminous exhibits—is fully summarized by the district court, we do not repeat it here. *Foster*, 2012 WL 407442, at *4-18. Based on that evidence, the district court made the factual determination that "the primary duty of Nationwide's SIs is to conduct investigations into suspicious claims with the purpose or goal of resolving indicators of fraud present in those claims." *Id.* at *19. The SIs uniformly described the tasks of their investigations as including: "resolving the indicators of fraud, gathering information, taking statements, interviewing witnesses, making referrals to law enforcement and the [National Insurance Crime Bureau (NICB)], recommending the retention of outside vendors [such as accident reconstruction or fire origin experts], supervising outside vendors, and recommending and [sometimes] conducting [Examinations Under Oath (EUOs)]." *Id.* at *20.

---

[1]Plaintiffs conceded that the dozen or so claims arising under New York law are analyzed the same as those under the FLSA, but separately argued the fifteen or so claims brought under similar but not identical provisions of California law.

Significantly, in determining the parameters of the SIs' primary duty, the district court expressly rejected plaintiffs' contention that the investigations involve merely gathering and reporting facts because that "formulation is too narrow as it leaves out the resolution of fraud indicators, which the Court concludes is supported by the evidence as being a component of the primary duty." *Id*. at *20. After analyzing the available authority addressing the third element, the district court found that "the SIs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance in at least two distinct ways." *Id*. at *25. The two ways are, first and most importantly, resolving the indicators of fraud and, second, deciding when to refer claims to law enforcement and the NICB. *Id*. at *25-28. Finally, the district court separately considered the claims brought under California law, set forth the relevant regulations, and concluded that Nationwide also met its burden of establishing the requirements of California's similar but not identical administrative employee exemption. *Id*. at *28-30. Judgment was entered in favor of Nationwide, and this appeal followed.

## II.

We review the district court's decision granting partial summary judgment de novo. *Renfro II*, 497 F.3d at 575; *Schaefer v. Indiana Mich. Power Co.*, 358 F.3d 394, 399 (6th Cir. 2004). After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo. FED. R. CIV. P. 52(a)(6); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

### A.     FLSA's Administrative Employee Exemption

At the outset, plaintiffs argue that the DOL's general regulations broadly provide that "investigators" do not qualify for the administrative employee exemption. In fact, the general regulations caution that a job title alone is not determinative of an employee's exempt or non-exempt status. *See* 29 C.F.R. § 541.2. Further, plaintiffs' reliance on the highlighted language from the following general regulation is misplaced:

> The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, **investigators**, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, . . . **who perform work such as** preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; **conducting investigations or inspections for violations of law**; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; **interviewing witnesses**; interrogating and fingerprinting suspects; **preparing investigative reports; or other similar work**.

29 C.F.R. § 541.3(b)(1) (emphasis added).  We agree with the district court that, read in context, this limitation on the application of all three of the exemptions must be understood to pertain to law enforcement and public safety personnel and not to the SIs employed by Nationwide.  As the district court explained, this conclusion is confirmed by the fact that the DOL's stated purpose for adopting this provision was to clarify that "police officers, fire fighters, paramedics, EMTs *and other first responders* are entitled to overtime pay."  *Foster*, 695 F. Supp. 2d at 757-58 (quoting 69 Fed. Reg. 22122-01, at 22129 (Apr. 23, 2004) (emphasis added)).  With that, we turn to the regulations defining the second and third elements of the administrative exemption.

### 1.     General Business Operations

Plaintiffs contend that the district court erred as a matter of law in finding that the SIs' primary duty includes the performance of work "directly related" to Nationwide's "general business operations."  29 C.F.R. § 541.200(a)(2).  The DOL regulations explain that this "refers to the type of work performed by the employee." 29 C.F.R. § 541.201(a).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id.*  This is often referred to as the administrative-production dichotomy, under which production employees (whose job it

is to generate the product or service the business offers to the public) will not qualify for the exemption. *See Schaefer*, 358 F.3d at 402. Not all work is classified as either production or administrative, as this dichotomy does not fit all cases. *Id*. at 402-03; *see also Renfro v. Indiana Mich. Power Co. (Renfro I)*, 370 F.3d 512, 517 (6th Cir. 2004) ("When employees engage in work that is 'ancillary to an employer's [or the employer's customer's] principal production activity,' those employees are administrative.") (citation omitted)).

Plaintiffs renew the argument that SIs are engaged in day-to-day production work because Nationwide's "business" is actually selling the promise of asset protection. However, the record supports the district court's rejection of that characterization and its determination that Nationwide is in the business of creating and marketing insurance policies to the public. *See Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) (holding insurance company's business is to produce policies); *Jastremski v. Safeco Ins. Cos.*, 243 F. Supp. 2d 743, 753 (N.D. Ohio 2003) (same). Since the SIs do not write or sell insurance policies, the district court did not err in concluding that the SIs "cannot be fairly characterized as 'production' employees." *Foster*, 695 F. Supp. 2d at 756.[2]

The question remains whether the SIs' primary duty to conduct investigations into suspicious claims is "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a); *see Foster*, 695 F. Supp. 2d at 756. The regulations describe work directly related to management or business operations as including, but not limited to, "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising;

---

[2]Although plaintiffs rely on *Gusdonovich* to argue that insurance investigators are production employees, that court's reasoning rests squarely on the fact that the employer was in the business of conducting investigations for insurance companies and other clients. *Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262, 265 (W.D. Pa. 1985); *see also Reich v. New York*, 3 F.3d 581, 587 (2d Cir. 1993) (finding police investigator nonexempt because employer in law enforcement business and primary function is to conduct criminal investigations). Similarly, the string of DOL Opinion Letters plaintiffs relied upon for the proposition that investigators are production employees each involved investigations that "comprised the core business function of the employer." *Foster*, 695 F. Supp. 2d at 757.

marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b). Although not specifically mentioned, an insurance company's investigation of suspicious claims is similar to some of these functional areas.

In fact, Nationwide argues that the SIs' work overlaps that of insurance claims adjusters, which are identified, by way of example, as satisfying both the second and third elements of the administrative exemption. Specifically:

> Insurance claims adjusters generally meet the duties requirements [elements two and three] for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses, and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). This supports the conclusion that claims adjusting work performed for an insurance company is ancillary to an insurance company's primary production activity. *See, e.g.*, *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872 (7th Cir. 2008) (holding claims adjusting work performed for client insurance companies was ancillary to the production of insurance by the employer's clients). Although Nationwide severed some of these activities from the investigative work of the SIs, the SIs' work remains integral to the claims adjusting function, is performed in partnership with the CAs, and involves making findings that bear directly on the CAs decisions to pay or deny a claim.

We agree with the district court's conclusion that just as claims adjusting is ancillary to Nationwide's general business operations, the SIs' investigative work that drives the claims adjusting decisions with respect to suspicious claims is also directly related to assisting with the servicing of Nationwide's business. *See, e.g.*, *Mullins v.*

*Target Corp.*, No. 09-c-7573, 2011 WL 1399262, at \*5 (N.D. Ill. April 13, 2011) (finding employee who investigates fraud and theft was assisting in servicing the employer's primary business).  Despite plaintiffs' argument that this interpretation will cause the exemption to swallow the rule,  the significance of the SIs' work to this servicing function belies that claim.  The district court did not err in concluding that "investigative services performed in direct furtherance of claims adjusting efforts" satisfies the second element of the administrative exemption.  *Foster*, 695 F. Supp. 2d at 758.

## 2.        Discretion and Independent Judgment on Matters of Significance

Plaintiffs contend that the district court articulated the proper inquiry in denying summary judgment on this element, but then erred after trial by departing from its own rubric in determining that Nationwide had established that the SIs' "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).  The regulations explain that "discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," 29 C.F.R. § 541.202(a), and requires "more than the use of skill in applying well-established techniques, procedures or specific standards in manuals or other sources," 29 C.F.R. § 541.202(e).  The term "'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).

Nationwide argues that the SIs' investigative work is akin to that of claims adjuster duties that the DOL describes as generally meeting the duties requirements in 29 C.F.R. § 541.203(a).  *See Roe-Midgett*, 512 F.3d at 874 (finding material damage appraisers administratively exempt).  Plaintiffs, on the other hand, argue that the SIs' work is more like public inspectors and investigators who are not exempt "because their work involves the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met."  29 C.F.R. § 541.203(j); *see* Opinion Letter from Dept. of Labor, Wage & Hour Div. (Aug. 19,

2005) 2005 WL 3308592 (employee conducting background investigations for security clearance purposes for employer's customer did not satisfy either of the duties requirements). Resolution of this question turns on the district court's factual findings concerning the work that comprises the SIs' primary duty to conduct investigations into those claims that present "indicators of fraud."

Plaintiffs continue to argue that by separating the claims adjusting decisions from the investigative duties and subjecting the SIs' work to guidelines and extensive quality control and auditing standards (*i.e.*, Accelerated Claims Excellence (ACE), Quality Assurance (QA), and File Review Questions (FRQ)), Nationwide stripped the SIs of tasks that involved any exercise of discretion and independent judgment with respect to matters of significance. In determining "whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment, we consider whether those guidelines and procedures contemplate independent judgment calls or allow for deviations." *Renfro II*, 497 F.3d at 577 (citations omitted). The district court summarized the constraints on the SIs as follows:

> While ACE contemplates the application of a certain measure of knowledge and skill, at the same time, it contemplates independent judgment calls and allows for deviations. ACE does not appear to transform a fraud investigation into a formulaic or purely mechanical endeavor. In fact, many of the FRQs that comprise ACE are geared towards promoting efficiency, proper documentation, and effective communication. The FRQs that do speak to specific investigative tasks are primarily concerned with whether the information elicited is "relevant" and "appropriate." It is left to the Special Investigator to decide things such as who to interview, what documents to review, what leads to pursue, and similar tactical matters. Though some direction is provided by the Special Investigator's action plan—which defines the scope of the investigation and to which ACE requires adherence—Special Investigators are integrally involved in developing such action plans for their respective investigations. Moreover, ACE permits Special Investigators to deviate from their action plans so long as they document the changes in Nationwide's electronic claims system.

*Foster*, 695 F. Supp. 2d at 761. Despite plaintiffs' assertion to the contrary, the district court expressly recognized that, as explained in the 2005 DOL Opinion Letter, the SIs'

discretion with respect to the logistics of the investigation does not involve the level of discretion and judgment required to satisfy this requirement because it does not relate to "matters of significance." *Id.* However, the district court also found that there were genuine issues of material fact "whether Nationwide's Special Investigators make far weightier determinations—determinations that do relate to matters of significance and that cannot be arrived at by simply applying knowledge and skills to ACE guidelines." *Id.*[3]

As discussed earlier, the district court made the factual determination that an SI's primary duty is not simply to gather and report facts but "to conduct investigations into suspicious claims with the purpose or goal of resolving indicators of fraud present in those claims." *Foster*, 2012 WL 407442, at \*19. The district court also found that the task of resolving the indicators of fraud involves the exercise of discretion and independent judgment with respect to matters of significance. *Id.* at \*25. The district court explained, in part, as follows:

> Turning to the resolution of fraud indicators in the claims investigated by SIs, Plaintiffs argue that Nationwide is attempting to have its cake and eat it too by complying with state laws that prevent unlicensed individuals from adjusting insurance claims and avoiding bad faith litigation, while at the same time asserting that the SIs jobs involve providing recommendations and opinions to management, an activity conceivable encroaching upon that which may only be done by licensed adjusters. Plaintiffs point to the requirements in Nationwide's policy documents that SIs provide only factual information and not opinions in claims logs and in oral discussions to refute Nationwide's position regarding discretion and judgment in the fact-finding process. Plaintiffs emphasize words and phrases in these documents such as "factual and not opinionated" and "objective" as evidence that the SIs exercise no discretion or judgment. However, other language in the documents, and the testimony of the SIs, suggest just the opposite. In the Court's view,

---

[3]The 2005 DOL Opinion Letter explained that: "planning one's own workload, such as prioritizing the pursuit of particular leads, assessing whether the leads provided are in the Investigator's area of responsibility, or have provided information that requires further investigation, determining which potential witnesses to see and which documents to review, and making similar decisions that promote effective and efficient use of that individual's own work time in performing assigned investigative activities, do *not* constitute exercising discretion and independent judgment with respect to matters of significance." 2005 WL 3308592 (emphasis in original).

terms such as "factual findings," "relevant," "pertinent," and "resolve" connote a degree of discretion and judgment inherent in the investigatory process undertaken by the SIs. In other words, as per *Renfro*, these terms all "contemplate independent judgment calls." *Renfro*, 497 F.3d at 577.

Further, nearly all of the testifying SIs characterized their investigations as searches for truth or attempts to determine that the subject claims are either legitimate or not legitimate. For instance, Jacobs testified that it was his job to resolve the facts on suspicious claims. According to Foster, all of his investigations involved finding the truth. Edwards testified that claims are referred to the SIU to resolve suspicions. Cobb testified that the job involves validating legitimate claims. Marakovits testified that finding out the truth is the most important part of the job. Schmidt shared a similar sentiment and further testified that he used his judgment to determine the origin and cause of the fires he investigated. Finally, according to Womack, the goal of his investigations was to find out the truth.

A doctorate in philosophy is not required to realize that "truth" is not an entirely objective concept. Determining truth requires "factual findings," a process that necessarily requires judgment and discretion. Nationwide's SIs use their experience and knowledge of fraud to distinguish the relevant from the irrelevant, fact from untruth, to resolve competing versions of events. Accordingly, the Court concludes that through the resolution of indicators of fraud, the SIs exercise discretion and independent judgment. The Court further concludes that the discretion exercised by the SIs impacts matters of significance. The facts developed by the SIs during their investigations have an undisputed influence on Nationwide's decisions to pay or deny insurance claims. Paying insurance claims is central to Nationwide's business, and payment of fraudulent claims would threaten to make the company less competitive in its industry.

. . . .

Some of the testifying Plaintiffs noted that, in certain instances, the facts of [a] particular situation "speak for themselves." The Court credits this testimony and agrees that, in the variety of claims investigated by the SIs, some are undoubtedly more simplistic than others. However, this fact does not undermine the Court's conclusion that discretion and independent judgment is inherent in the fact finding element of the SIs' investigations. In this regard, the DOLs' regulations only require that the primary duty of [an] administrative employee "include" the exercise of discretion and independent judgment. *See id.* § 541.200(a)(3); *Robinson-Smith* [*v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 894 (D.C. Cir. 2010)] ("In any event, engaging in total loss negotiations

even 20 times per year satisfies the short test requirement that the adjuster's primary duty 'include[]' the exercise of discretion and independent judgment."). Accordingly, the fact that the determination of the truth in some cases may require less judgment and discretion than in others is not fatal to Nationwide's establishment of the administrative exemption.

*Id*. at *25-26. Plaintiffs do not contend that these factual findings are clearly erroneous, but instead argue that the SIs' primary duty does not include the exercise of discretion or independent judgment on matters of significance as a matter of law. However, as this court recently explained, courts cannot make that determination as a matter of law when there are material questions of fact concerning the work performed and whether it involved discretion and independent judgment. *See Henry v. Quicken Loans*, 698 F.3d 897, 901 (6th Cir. 2012) (affirming jury verdict finding mortgage bankers administratively exempt).

Nor are we persuaded that the district court erred in distinguishing the SIs' duties from those of the background investigators that were the subject of the 2005 DOL Opinion Letter. Ordinarily, an agency interpretation of its own ambiguous regulations is entitled to *Auer* deference. *See SmithKline*, 132 S. Ct. at 2166 (discussing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)). The investigators, employed by a company that contracted with an agency of the Department of Defense to conduct background investigations of individuals for purposes of government security clearance, were expected to interview witnesses and obtain record information regarding citizenship, education, employment, criminal convictions, medical history, financial history, and foreign travel and connections. Although any discrepancies or inconsistencies were to be "resolved," the DOL described the investigators' primary duty as gathering factual information and preparing a report that would allow the government agency to determine whether to employ the individual under investigation. The DOL opined that the investigators were "merely applying their knowledge in following prescribed procedures or determining which procedure to follow, or determining whether standards are met." 2005 WL 3308592. The district court did not err in finding that the SIs' investigations with the purpose of resolving the indicators of fraud and the legitimacy of the suspicious

claims are unlike the narrower more formulaic background investigations into the facts and records that the DOL found did not involve the exercise of discretion and independent judgment with respect to matters of significance.

Finally, plaintiffs argue that the district court erred by not following two other district court decisions that found special investigators at other insurance companies did not meet the third element of the administrative exemption. *See Fenton v. Farmers Ins. Exch.*, 663 F. Supp. 2d 718, 725-27 (D. Minn. 2009); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 905-08 (D. Minn. 2010). Although neither decision is controlling, and both cases were decided on motions for summary judgment, the similarities to this case merit some discussion.

In *Fenton*, Farmers Insurance Exchange (FIE) employed special investigators to investigate claims "flagged" as exhibiting potential signs of fraud. Those investigations were conducted under the direction of a claims representative; were concluded with the submission of an exhaustive file and report; and were subjected to strict quality assurance review guidelines. Unlike this case, however, the evidence showed that FIE's special investigators were to provide all evidence, inculpatory and exculpatory, so it could be evaluated by the claims representative. This led the court to find that the investigator's "primary role is simply to gather facts and present them for someone else to analyze." *Fenton*, 663 F. Supp. 2d at 727. Restricted to the application of well-established techniques in developing an evidentiary record, the investigators did not exercise sufficient discretion and independent judgment to satisfy this element. *Id.* (comparing *Gusdonovich*, 705 F. Supp. at 263, where the investigator's primary responsibilities were "the search of public records, the serving of subpoenas and orders, surveillance, [and] the interrogation of witnesses").

In *Ahle*, the employer, Veracity Research, was an investigative firm that employed investigators to conduct insurance claim investigations for its clients. The evidence established that the investigators had no control over the investigation itself, were expected to obtain all of the facts regardless of their impact, and expressed no subjective opinions or conclusions about their investigative observations. From this, the

court concluded that, as in *Fenton* and *Gusdonovich*, the duties of the claims investigators did not involve a sufficient degree of discretion and independent judgment with respect to matters of significance. *Ahle*, 738 F. Supp. 2d at 906. Indeed, the court in *Ahle* specifically distinguished Veracity's investigators from Nationwide's SIs precisely because there was a question of fact in this case whether the investigator's "'primary duty encompasses providing their opinions and conclusions regarding their investigative findings.'" *Ahle*, 738 F. Supp. 2d at 907 (quoting *Foster*, 695 F. Supp. 2d at 761).

Notwithstanding the superficial similarities to the investigators in *Fenton* and *Ahle*, the district court did not err in concluding based on its factual findings that the SIs' primary duty to conduct investigations with the goal of resolving the indicators of fraud includes the exercise of discretion and independent judgment with respect to matters of significance. The discretion and independent judgment exercised in determining and communicating (albeit informally) the legitimacy or illegitimacy of suspicious claims referred for investigation is a matter of significance to Nationwide. *Foster*, 2012 WL 407442, at *26. That being the case, we need not address the novel question of whether the discretion and independent judgment exercised in deciding whether to refer claims to law enforcement or the NICB would also be related to "matters of significance."

**B.        California's Administrative Exemption**

The district court's decisions discussed California's somewhat different requirements before concluding that Nationwide met its burden of proving the exemption under California law. *See Foster*, 695 F. Supp. 2d at 763-64; *Foster*, 2012 WL 407442, at *28-30. Plaintiffs assert that California's administrative exemption to its overtime laws is more restrictive than the exemption under the FLSA, but do not explain how it is different, cite to any authority interpreting the differences, or develop the argument that a different result is required under California law. This argument is at best perfunctorily raised. *See Renfro II*, 497 F.3d at 576 ("'It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'") (citation omitted). Indeed, when charged with waiving the argument,

plaintiffs' reply was that the facts and legal analysis argued in the context of the FLSA claims applied equally to the analysis of the exemption under California law. Any distinct argument regarding California law is waived.

**AFFIRMED.**