NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0337n.06

**No. 19-1716**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 09, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CITY OF GRAND RAPIDS, MICHIGAN, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| GRAND RAPIDS POLICE OFFICERS ASSOCIATION, | ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | OPINION |
| MATTHEW JANISKEE, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  The City of Grand Rapids terminated Lieutenant Matthew Janiskee based on information revealed in recorded telephone calls among Grand Rapids police officers.  When a dispute arose over liability for wiretapping, the City sought a declaration that its actions did not violate federal and state wiretap laws, and Janiskee filed statutory and tort counterclaims.  The district court found that the City recorded those phone calls inadvertently, not intentionally, and thus is not liable under federal or Michigan wiretap statutes.  The court dismissed all Janiskee's claims, statutory and tort, based on that finding.  We **AFFIRM** the dismissal of all Janiskee's claims except his invasion of privacy common-law tort claim.  We **REVERSE** that dismissal and **REMAND** for further proceedings on that claim.

## I.   BACKGROUND

In November 2016, the Grand Rapids Police Department dispatched an officer to a car accident site.  The driver of the car, a Kent County assistant prosecutor, drove down a one-way street and struck a parked car.  The on-scene officer called Defendant Watch Commander Matthew Janiskee on a recorded, public line—Line 3604—and explained the accident; Janiskee responded that the officer should hang up and call him on a non-public line—Line 3407—that the officers understood to be unrecorded.  The officer hung up and called Janiskee on Line 3407; five conversations took place on that line and serve as the crux of this case.

In December 2016, the Police Department investigated the car accident and the officers' handling of it.  Based on the recorded Line 3604 phone call, the Department sought information about the five subsequent phone calls placed on Line 3407 and found that the Line 3407 calls had also been recorded.  It learned that phone calls made on Line 3407 had been recorded for at least two years, starting on February 21, 2014, and that a database for those recordings had been created on September 27, 2013.  The Department did not, however, find a single City employee or witness that was aware Line 3407 was being recorded throughout that time.  The Police Department sought legal advice and decided to use the recorded phone calls as part of its internal investigation of the officers' handling of the accident.  Following the investigation, it terminated Janiskee on March 31, 2017.

### A.   Phone Technology and System Developments

In 2010, the Police Department replaced its existing telephone system with a Cisco system that included Voice over Internet Protocol (VoIP).  The City subcontracted with CDW Government to implement the new system and oversee its daily operation, as well as provide necessary support.  CDW did so by employing various other subcontractors.

The Department requested that CDW make Line 3604, a publicly known line, configured so that all calls were recorded, and Line 3407, a non-public line, unrecorded. CDW hired independent contractor Damon Pointer to install the necessary hardware and software for recording Line 3604 and he trained Scott Cox, a CDW senior network voice engineer, to configure the telephone's recording function. Both Pointer and Cox testified that no one from the City or the Department requested that Line 3407 be recorded and that their testing of the installation ensured that Line 3407 remained an unrecorded line. CDW noted, however, that when either line was placed on hold and the other line was answered, both lines would be recorded; this was referred to as Issue 61.

To access and reconfigure various features of the Cisco phone system, including the recording function, required certain administrative credentials. Those credentials allow an individual to log into two separate servers—the Call Manager server and the Quality Management server—and complete various processes to implement changes in the system. The parties disputed whether any City or Police Department employee had such credentials; the City claims it did not and Janiskee asserts otherwise.

### B.    Procedural History

The City filed this suit on February 3, 2017, seeking declaratory relief that the five recorded phone calls on Line 3407 were not obtained in violation of the Electronic Communications Privacy Act (the Federal Wiretap Act), 18 U.S.C. §§ 2510 *et. seq*. Janiskee answered and filed counterclaims, alleging that by intentionally recording Line 3407, the City violated state and federal wiretap laws, his Fourth Amendment rights, and state common law rights regarding invasion of privacy. In response to the City's motion for summary judgment, Janiskee filed Rule

56(d) motions to conduct discovery limited to the technical issues related to recording Line 3407 and was granted two periods of discovery.

On the cross motions for summary judgment, the district court granted in part the City's motion and denied Janiskee's motion. It held that whether the City recorded the phone calls inadvertently was an issue of material fact and preserved the parties' competing wiretap claims and Janiskee's two invasion of privacy claims. Following Janiskee's technical discovery on recording Line 3407, the court held a bench trial limited to the "inadvertent/intent . . . issues only" under the wiretap statutes. In their Revised Final Pretrial Order, the parties acknowledged that the bench trial would be limited to issues of fact and law regarding the City's intent under the wiretap statutes. After the trial, the court found that the City recorded Line 3407 inadvertently and thus would not be liable under either federal or state wiretap laws. The court then returned to the remaining invasion of privacy counterclaims and dismissed all of them based on its finding that the City's recording of Line 3407 was inadvertent.

Janiskee timely appeals.

## II.    ANALYSIS

"After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo." *Holt v. City of Battle Creek*, 925 F.3d 905, 909 (6th Cir. 2019) (quoting *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 643–44 (6th Cir. 2013)).

### A.    Federal and State Wiretap Statutes

Title III of the Omnibus Crime Control and Safe Streets Act, known as the Federal Wiretap Act, provides the standards and procedures for the use of electronic surveillance. *See* 18 U.S.C. §§ 2510 *et. seq.* The Act subjects to criminal sanction anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire,

oral, or electronic communication." 18 U.S.C. § 2511(1)(a). It excludes from liability "inadvertent interceptions." *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 743 (4th Cir. 1994) (quoting *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992)); *see also First v. Stark Cty. Bd. of Comm'rs.*, 234 F.3d 1268, at *4–5 (6th Cir. 2000) (Table). Similarly, the Michigan Eavesdropping Act prohibits "willfully us[ing] any device to eavesdrop upon [a private] conversation without the consent of all parties thereto." Mich. Comp. Laws § 750.539c. The terms willful and intentional are synonymous. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

After hearing from eleven live witnesses and reviewing depositions and over fifty exhibits at trial, the district court found that the City recorded Line 3407 inadvertently. The evidence revealed that, when CDW implemented the Cisco telephone system in 2010, it configured Line 3407 not to record telephone calls, and independent contractors and CDW employees tested and confirmed that the line would not record. The City subsequently hired IT subcontractors to make upgrades to the system, including switching to a virtualized system in 2013. That change, according to contractor Pointer and City IT administrator Tim Becker, may have allowed for human error in reconfiguring telephone settings. *See Sanders*, 38 F.3d 742–43 (refusing to find intentionality where recordings were a "result of design defect and was not known to anyone"). No City or Police Department employee testified that he or she knew or was aware that the Cisco system was recording phone calls on Line 3407 until December 7, 2016, when the Police Department investigated its officers' handling of the car accident. Following extensive discovery, Janiskee provided no evidence showing that anyone intentionally recorded Line 3407 or had any reason to do so. *See First*, 234 F.3d 1268, at *5 (dismissing wiretap claim at summary judgment because the plaintiff failed to proffer any evidence that the defendant "'intended' to record personal

conversations"). The record supports the district court's finding that the City recorded the phone calls inadvertently.

Janiskee argues that the district court erred in relying on Becker's testimony because it was not based on personal knowledge and he was not admitted as an expert. Becker served as the City's networks and operations administrator between December 2008 and June 2016 and in that position, participated in the day-to-day operation and implementation of the multiple technological updates to the Police Department's Cisco telephone system. He testified that in switching to a VoIP system, Pointer designed the software; he "analyzed" it; the CDW implemented it; and he "follow[ed] up and ma[d]e sure the contractor got done what needed to be done." The record demonstrates that Becker had personal knowledge of the system upgrades because he participated in that process. At a minimum, his testimony is "rationally based on [his] perception" of those upgrades. *United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015) (quoting Fed. R. Evid. 701). The district court did not err in allowing and relying on Becker's testimony.

Janiskee also argues that the district court disregarded the "Recording Access by User" report, generated by the City's telephone system, that provided evidence of secret downloads. The report demonstrated that Line 3407 had been accessed a handful of times, innocently and in the course of unrelated work. At trial, Janiskee showed that one can access and download recordings without leaving a trace on the access report; thus, the report did not foreclose the possibility that someone intentionally recorded and accessed the recordings of Line 3407. That inference is unavailing. Despite significant discovery, Janiskee failed to offer any specific evidence demonstrating intentionality; ample grounds support the district court's finding that the City recorded Line 3407 inadvertently. *See First*, 234 F.3d 1268, at *5. That the court's finding of inadvertence was related only to the five phone calls, moreover, does not undermine its

determination because it was based on the full timeline of development of the Cisco telephone system.

Janiskee also points to Issue 61, which allowed for the recording of Line 3407 when a call was put on hold and a call from Line 3604 was answered. Issue 61, however, disappeared when the Police Department upgraded its phone system in 2013. And Janiskee has not shown that the City intentionally implemented that initial configuration or that such a configuration leads to the conclusion that the City intentionally recorded the five phone calls at issue. Though the City's two-year retention policy prevents access to any Line 3407 phone call recordings prior to February 21, 2014, that does not detract from the ample record evidence supporting the district court's inadvertence determination.

The district court's determination that the City recorded the phone calls inadvertently is supported by the record and was not an abuse of discretion. That finding resolves the federal and state statutory wiretap claims.

### B.    Remaining Counterclaims

We turn now to the counterclaims raised by Janiskee that were not the focus of the limited bench trial. Janiskee argues that the district court erred by simply employing its finding of inadvertence to dismiss his other claims, which included: (1) other violations of the Federal Wiretap Act and (2) the common-law invasion of privacy tort claims. The court did not err in dismissing Janiskee's claims under the Federal Wiretap Act because its finding that the City inadvertently, not intentionally, recorded Line 3407 is dispositive of those claims. *See Obron Corp. v. Barr*, 990 F.2d 861, 863–64 (6th Cir. 1993) (holding that using tapes obtained under a § 2511 exemption did not violate the Federal Wiretapping Act); *see also First*, 234 F.3d 1268, at *4 ("To prevail on a use or disclosure claim, there must be an illegal interception."); *In re High*

*Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 625 (7th Cir. 2000) ("Section 2511 exempts the conversations covered by it from the *entirety* of Title III. 'Since . . . the interception in the case was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act.'" (alteration in original) (quoting *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971))).

We turn to the tort claims. "The tort of invasion of privacy is based on a common-law right to privacy," which protects against, among others, intrusion upon an individual's seclusion and public disclosure of embarrassing private facts about an individual. *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. App. Ct. 1995). Janiskee brought a claim under each of these theories.

The court did not err in dismissing Janiskee's claim for intrusion upon seclusion based on its inadvertence finding. *See Doe*, 536 N.W.2d at 832 (clarifying "that an action for intrusion does not exist where '[t]he only aspect of the contemplated disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which it was obtained.'" (quoting *Tobin v. Mich. Civ. Serv. Comm'n*, 331 N.W.2d 184, 190 (Mich. 1982))); *see also Geiling v. Wirt Fin. Servs., Inc.*, No. 14–11027, 2014 WL 8473822, at \*53 (E.D. Mich. 2014) (interpreting Michigan law to find that "defendants who inadvertently receive [private] information have not intruded" upon another's seclusion); *Johnson v. Northshore Univ. Judge Presiding Healthsystem*, No. 1–10–0399, 2011 WL 10069086, at \*5 (Ill. Ct. App. Mar. 31, 2011) (finding that defendants who obtained private information based on an "inadvertent error" did not engage in "offensive prying").

Janiskee's privacy claim based on public disclosure of embarrassing private facts, however, raises issues distinct from inadvertence. This claim was never addressed by the district court. It requires Janiskee to show "(1) the disclosure of information, (2) that is highly offensive to a reasonable person, and (3) that is of no legitimate concern to the public." *Id.* at 828. As

demonstrated by these elements, the court's determination on inadvertence is not dispositive of this claim. The court erred in dismissing Janiskee's invasion of privacy common law tort claim.

"This court can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 886 (6th Cir. 2020) (alterations omitted) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999)). Indeed, given the facts alleged in Janiskee's countercomplaint and the facts developed in the record, we struggle to see how Janiskee could prove that Grand Rapids disclosed private facts that were of no legitimate concern to the public. We recognize, however, that the record here is limited—the district court granted limited discovery and held a limited-purpose bench trial. It never listened to the five recorded calls at issue because their content was irrelevant to the issue of inadvertence. But without a record of the calls, we cannot determine whether the calls concerned private facts that were of no legitimate concern to the public. Because the record is insufficient, we remand to the district court for consideration of this claim in the first instance.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment on all claims save Janiskee's invasion of privacy common-law tort claim for public disclosure of private facts. We **REVERSE** that dismissal and **REMAND** for further proceedings on that claim.