**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2111**

SAMUEL CALDERON, individually and on behalf of other similarly situated individuals; MICHAEL HEADLEY; AARON KULSIC; KENNETH MILLER; MICHAEL CREAMER; GEORGE WOOD; ROBERT DEMARTINO; JOHN HALLIDAY; JAMES L. HANSON; THOMAS F. BRADY; DANA FERRIN; MAUREEN AYLING; CANDIDO CUBERO; THOMAS FITZGERALD; WILLIAM DOLINSKY; MARVIN HOURIGAN; DAVID MCCAMLEY; AUGUSTUS STANSBURY, JR.; JOAN BISCHOFF; RANDALL GIBSON; VINCENT GRECO; TERESA HARTEY-ADAMETZ; THOMAS LOWE; DAVID MCENRY; JENNIFER RICCA; ANITA SINGH; BRYAN UTTERBACK; PATRICK WEISE; LEAH HAMILTON; DENNIS FULTON; EBERHARD GROSSER; JOSEPH MILES, JR.; RICKY MCCRACKEN; THOMAS STURGIS; CHRISTOPHER SULLIVAN; MICHAEL RUSSELL; RANDALL STEWART; LAVERNE HOLMES; THOMAS DAVIDSON, JR.; SHANNON BOYD; ANTHONY DEAN, JR.; FRANCISCO NOGALES; JOHN GHETTI; GERALD DEXTER; CLAUDE REIHER; STEVEN MCBRIDE; PHILLIP RONDELLO; ROBERT MERRY,

                    Plaintiffs - Appellees,

        and

MICHAEL BROWN,

                    Plaintiff,

        v.

GEICO GENERAL INSURANCE COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY,

                    Defendants – Appellants,

        and

GEICO CORPORATION; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; DOES 1-10,

                    Defendants.

No. 14-2114

SAMUEL CALDERON, individually and on behalf of other similarly situated individuals; MICHAEL HEADLEY; AARON KULSIC; KENNETH MILLER; MICHAEL CREAMER; GEORGE WOOD; ROBERT DEMARTINO; JOHN HALLIDAY; JAMES L. HANSON; THOMAS F. BRADY; DANA FERRIN; MAUREEN AYLING; CANDIDO CUBERO; THOMAS FITZGERALD; WILLIAM DOLINSKY; MARVIN HOURIGAN; DAVID MCCAMLEY; AUGUSTUS STANSBURY, JR.; JOAN BISCHOFF; RANDALL GIBSON; VINCENT GRECO; TERESA HARTEY-ADAMETZ; THOMAS LOWE; DAVID MCENRY; JENNIFER RICCA; ANITA SINGH; BRYAN UTTERBACK; PATRICK WEISE; LEAH HAMILTON; DENNIS FULTON; EBERHARD GROSSER; JOSEPH MILES, JR.; RICKY MCCRACKEN; THOMAS STURGIS; CHRISTOPHER SULLIVAN; MICHAEL RUSSELL; RANDALL STEWART; LAVERNE HOLMES; THOMAS DAVIDSON, JR.; SHANNON BOYD; ANTHONY DEAN, JR.; FRANCISCO NOGALES; JOHN GHETTI; GERALD DEXTER; CLAUDE REIHER; STEVEN MCBRIDE; PHILLIP RONDELLO; ROBERT MERRY,

Plaintiffs - Appellants,

and

MICHAEL BROWN,

Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendants – Appellees,

and

GEICO CORPORATION; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; DOES 1-10,

Defendants.

2

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge. (8:10-cv-01958-RWT)

_____

Argued: October 28, 2015                    Decided: December 23, 2015

_____

Before TRAXLER, Chief Judge, KING, Circuit Judge, and DAVIS, Senior Circuit Judge.

_____

Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge Traxler wrote the opinion, in which Judge King and Senior Judge Davis concurred.

_____

**ARGUED:** Pratik A. Shah, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Appellants/Cross-Appellees. Matthew Hale Morgan, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellees/Cross-Appellants. **ON BRIEF:** Eric Hemmendinger, SHAWE & ROSENTHAL, LLP, Baltimore, Maryland; Hyland Hunt, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Appellants/Cross-Appellees. Timothy C. Selander, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellees/Cross-Appellants.

_____

TRAXLER, Chief Judge:

Government Employees Insurance Company and GEICO General Insurance Company (together, "GEICO") appeal a district court order granting judgment against them in an action asserting denial of overtime pay under the Fair Labor Standards Act ("FLSA"), see 29 U.S.C. §§ 201 et seq., and the New York labor law ("NYLL"), see N.Y. Lab. Law §§ 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. The plaintiffs cross-appeal several rulings relating to the remedy awarded. We reverse the denial of prejudgment interest and remand for a prejudgment interest award. Otherwise, we affirm.

## I.

GEICO is in the business of providing insurance for its customers. The plaintiffs in this matter are security investigators (the "Investigators") who currently work, or previously worked, for GEICO. The Investigators work in GEICO's Claims Department primarily investigating claims that are suspected of being fraudulent. The FLSA requires that employers pay overtime for each hour their employees work in excess of 40 per week, but it exempts "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). GEICO has long classified its Investigators as

4

exempt from the FLSA's overtime pay protections.[1] This case primarily concerns whether that classification is correct.

Viewing the facts concerning the classification in the light most favorable to GEICO, as we must,[2] the record reveals the following.

GEICO has employees called Claims Adjusters who work in the Claims Department and whose primary job it is to adjust insurance claims by investigating, assessing, and resolving them. The Claims Adjusters decide how much, if anything, GEICO will pay on a claim, and they negotiate any settlements.

The Investigators work in GEICO's Special Investigations Unit ("SIU"), which is part of GEICO's Claims Department. The Investigators report to Supervisors, who in turn report to Managers, who in turn report to the Assistant Vice-President of Claims. The SIU attempts to identify claims that are fraudulent

---

[1] The sole exception is in the state of California. GEICO in 2001 reclassified all non-managerial claims employees there as non-exempt as a result of a California state-court decision that narrowed the administrative exemption under state law.

[2] The district court granted partial summary judgment to the plaintiffs on the issue of whether they were improperly classified. See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (explaining that we review a grant of summary judgment de novo, "viewing the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party").

and that GEICO therefore does not have to pay.[3] An Investigator generally becomes involved in a claim when other Claims Department personnel refer the claim to him on suspicion that it is fraudulent, although there are limited circumstances under which the Investigators initiate investigations themselves. The Investigators' primary responsibility is to investigate whether such claims are fraudulent, which occupies about 90% of their time.

GEICO has procedures that govern an Investigator's handling of a claim that has been referred to him, which require:

1. A thorough investigation of the referral.

2. Identification and interviews of potential witnesses who may provide information on the accuracy of the claim and/or application.

3. Utilizing industry recognized databases as deemed necessary in conducting investigations.

4. Preservation of documents and other evidence.

5. Writing a concise and complete summary of the investigation, including the investigators['] findings regarding the suspected insurance fraud and the basis for their findings.

Calderon v. GEICO Gen. Ins. Co., 917 F. Supp. 2d 428, 432 (D. Md. 2012) (internal quotation marks omitted).

---

[3] According to the Insurance Information Institute, approximately 10% of claims payments – about $32 billion per year for the insurance industry – are for fraudulent claims. See Insurance Information Institute, Insurance Fraud, http://www.iii.org/issue-update/insurance-fraud (last visited Dec. 22, 2015) (saved as ECF opinion attachment). Each Investigator handles approximately 165 investigations per year.

GEICO requires Investigators when they receive a claim referral to begin their work by creating a plan of action regarding what steps must be taken in order to investigate the particular claim. The Investigator then enters this plan of action into the SIU Case Management System ("SICM").

An investigation might entail steps such as interviewing witnesses, taking photographs, and reviewing property damage. Some interviews may take the form of face-to-face questioning wherein the witness is under oath. Such interviews serve the purpose of obtaining information, providing the insured an opportunity to provide explanation or further substantiation for his claim. They also allow the Investigator to evaluate the credibility of the witness and to preserve the witness's testimony. Although GEICO has procedures governing how Investigators conduct investigations, Investigators still must use their judgment to determine exactly how to conduct their investigations and what inferences to draw from the evidence they uncover, including determining the credibility of insureds or other witnesses.

Investigators must submit an initial report within 10 days of receiving a claim referral and then submit interim reports every 20 days during the investigation. With regard to both interim and final reports, most Investigators – all but about 40 or 50 out of 250 – are required to submit their reports to their

7

Supervisor for review before the reports are submitted through the SICM. This allows the Supervisor to "provide any input he may feel appropriate because of his expertise" and to ensure that the reports comply with format requirements. J.A. 1372.

GEICO does not permit speculation in its reports and it requires that Investigators substantiate any conclusions in their reports with facts and evidence. However, Claims Adjusters generally do not review reports once they are finalized. Instead, they generally base their decisions regarding whether to pay claims on oral reports or summaries of the reports that the Investigators provide to them.

In addition to conducting investigations, finding facts, and reporting their findings, Investigators also spend a small percentage of their time performing other duties. They sometimes educate adjusters about fraud, often utilizing their experiences from the field. Also, when an Investigator is preparing to end his work on a case, he has discretion to refer the claim to the National Insurance Crime Bureau or other state agencies if he has found significant indications of fraud. And finally, when an investigation reveals a problem with the policyholder, Investigators also may choose to refer a case to GEICO's underwriting department so that the insured's rates may be adjusted when his policy comes up for review.

8

GEICO has long classified its Investigators as exempt under the FLSA. In 2004, two events prompted GEICO to revisit the issue. First, a federal district court ruled that GEICO had misclassified its auto damage adjusters as exempt. See Robinson-Smith v. GEICO, 323 F. Supp. 2d 12 (D.D.C. 2004). Second, the Labor Department issued new regulations concerning the administrative exemption. See Defining and Delimiting Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122 (Apr. 23, 2004).

In light of these events, GEICO Vice President of Claims John Geer asked GEICO's head of SIU, Steven Rutzebeck, to consider under the reasoning of the Robinson-Smith opinion whether the Investigators would be properly classified as exempt. Rutzebeck concluded that, assuming that the reasoning of the decision was correct, it would apply to GEICO's Investigators as well.

Geer, an attorney, questioned the correctness of the Robinson-Smith decision and concluded himself the Investigators were properly classified as exempt. Geer discussed the issue with his boss, Senior Vice President Donald Lyons, as well as with Senior Vice President of Human Resources David Schindler. The group, which collectively had extensive knowledge of Investigators' duties, concluded that despite what the reasoning

9

of Robinson-Smith might dictate, the Investigators were properly classified as exempt. Accordingly, GEICO continued the Investigators' exempt status. GEICO also appealed the Robinson-Smith decision, which was eventually reversed. See Smith v. GEICO, 590 F.3d 886 (D.C. Cir. 2010).

In 2007, GEICO undertook another review of various employee classifications under the FLSA, including that of the Investigators. After that review, which lasted one or two months and which involved different executives than did the 2004 review, GEICO again concluded that the Investigators were properly classified as exempt under the administrative exemption.

In 2010, named plaintiff Samuel Calderon brought a collective action under the FLSA in federal district court on behalf of himself and a proposed class of all persons who were or had been employed by GEICO as Investigators at any time in the United States, except for in California, within three years prior to the filing date of the action through the date of the disposition of the action. The complaint alleged that GEICO improperly classified the Investigator position as exempt from overtime under the FLSA. See 29 U.S.C. § 213(a). The complaint requested damages in the amount of their unpaid overtime, liquidated damages, interest, and an award of attorneys' fees and costs. See 29 U.S.C. § 216(b). After the district court

10

conditionally certified the FLSA claim as a collective action, approximately 48 current and former Investigators joined the suit as opt-in plaintiffs.

The plaintiffs subsequently amended their complaint to add an individual and class action claim for unpaid overtime pay under NYLL by opt-in plaintiff Tom Fitzgerald on behalf of himself and others who had worked as Investigators for GEICO in New York. See N.Y. Lab. Law §§ 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. In addition to seeking compensatory damages in the amount of the unpaid overtime, the amended complaint sought liquidated damages, and attorneys' fees and costs in regard to this cause of action. The district court certified the class.[4] See Fed. R. Civ. P. 23.

Following discovery, the plaintiffs moved for partial summary judgment, and GEICO moved for summary judgment, on the issue of liability. The district court granted the plaintiffs' motion and denied GEICO's, rejecting as a matter of law GEICO's contention that the Investigators fell within the FLSA's

---

[4] In its discretion, the district court exercised supplemental jurisdiction over the NYLL claims. See 28 U.S.C. § 1367; see Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 248 (2d Cir. 2011) (noting that "the Seventh, Ninth, and District of Columbia Circuits all have determined that supplemental jurisdiction is appropriate over state labor law class claims in an action where the court has federal question jurisdiction over FLSA claims in a collective action").

"administrative function" exemption. See Calderon, 917 F. Supp. 2d at 441–44.

The parties later filed cross-motions for summary judgment on several disputed remedy issues. Considering these motions, the court ruled that because GEICO acted in good faith, GEICO did not act willfully and thus the statute of limitations for the plaintiffs' claims extended only for two years. For similar reasons, the court also ruled that the plaintiffs were not entitled to liquidated damages or prejudgment interest. And finally, the court determined that because the plaintiffs were paid fixed salaries regardless of the varying number of hours they worked, the method of overtime described in Overnight Motor Transportation Co. v. Missel, 316 U.S. 572 (1942), applied to the plaintiffs' claims.

The district court then entered a "Stipulated Order Relating to Remedy" that it described as a "final judgment." J.A. 109, 112. That order "contain[ed] a complete formula for the computation of backpay" based on the rulings that the court had made and the parties' stipulations. J.A. 109. The order noted that both sides reserved the right to appeal the rulings of the district court underlying the order and that the order would "have no effect unless a judgment of liability is entered and sustained after all judicial review has been exhausted." J.A. 109. The backpay formula adopted by the district court

12

would produce an amount of backpay to which each plaintiff was entitled depending upon the total pay received and the total time worked for each two-week pay period within the applicable limitations period. The order further stated that "[t]he backpay calculations will be performed by a mutually acceptable entity with right of review and confirmation by Defendants' and Plaintiffs' counsel." J.A. 112. It also provided that the district court "shall have jurisdiction to resolve or supervise the resolution of any issue concerning the remedy that the parties are unable to resolve." J.A. 111. There was no limitation on the right of either party to appeal the district court's decisions.

GEICO subsequently appealed the district court's order granting partial summary judgment to the plaintiffs on the issue of liability, and the plaintiffs cross-appealed several of the district court's rulings regarding remedy issues.

Concluding that the district court had not yet found all of the facts necessary to compute the amount of damages to be awarded, we determined there was no final judgment and that we therefore lacked appellate jurisdiction; accordingly, we dismissed the appeals. See Calderon v. GEICO Gen. Ins. Co., 754 F.3d 201, 204-07 (4th Cir. 2014). On remand, the district court determined the amount of damages to which each plaintiff was entitled and entered judgment in favor of the plaintiffs.

13

Now the plaintiffs have once again appealed and GEICO has cross-appealed, with each party raising the same issues it raised in the prior appeal. Now that a final judgment is before us, we possess jurisdiction to consider the appeals, see Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 474 (10th Cir. 1976) ("The general rule is that an interlocutory order from which no appeal lies is merged into the final judgment and open to review on appeal from that judgment."), which we will address seriatim.

## II. GEICO's appeal

GEICO argues that the district court erred in granting partial summary judgment against it on the issue of liability. We disagree.

We review de novo a district court's order granting summary judgment, applying the same standards as the district court. See Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In FLSA exemption cases, "[t]he question of how [employees] spen[d] their working time . . . is a question of fact," but the ultimate question of whether the exemption applies is a question of law. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714

14

(1986); see also Shockley v. City of Newport News, 997 F.2d 18, 26 (4th Cir. 1993) (noting that the significance of an employee's duties can also present questions of fact). "FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'" Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 692 (4th Cir. 2009) ("Desmond I") (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).[5] See also Pugh v. Lindsay, 206 F.2d 43, 46 (4th Cir. 1953) ("Since the Act is remedial in nature, the exemptions contained therein must be strictly construed, and it is incumbent upon one asserting an exemption to bring himself clearly and unmistakably within the spirit and the letter of its terms."). In this circuit, employers must prove application of the exemptions by clear and convincing evidence. See Desmond I, 564 F.3d at 691 n.3.

---

[5] GEICO points out that the Supreme Court has recently explained that the rule that exemptions are narrowly construed against the employer is "inapposite where [courts] are interpreting a general definition that applies throughout the FLSA." Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2172 n.21 (2012). However, this case does not concern a general definition that applies throughout the FLSA. Rather, it involves interpreting the specific rules the Labor Department has created regarding the administrative exemption.

The FLSA generally requires that employers pay overtime in the amount of one-and-a-half times an employee's "regular rate" for each hour their employees work in excess of 40 per week. 29 U.S.C. § 207(a)(1). That requirement was intended "to spread employment by placing financial pressure on the employer" and "to compensate employees for the burden of a workweek in excess of the hours fixed in the Act." Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40 (1944). The Act does contain exemptions, however. As is relevant here, it exempts "any employee employed in a bona fide executive, administrative, or professional capacity."[6] 29 U.S.C. § 213(a)(1). Congress did not define this phrase. Rather, it delegated authority to the Labor Department to issue regulations "to define[] and delimit[]" these terms. Id. The current regulations, which were reissued in 2004, provide that the administrative exemption covers employees:

---

[6] Congress exempted employees fitting this description because "the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." Defining and Delimiting Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,124 (Apr. 23, 2004). Additionally, "the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week," thus "precluding the potential job expansion intended" by the overtime premium. Id.

16

(1) [Who are c]ompensated . . . at a rate of not less than $455 per week . . .;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).[7] The applicable New York regulations incorporate the federal exemption by reference. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; Gorey v. Manheim Servs. Corp., 788 F. Supp. 2d 200, 205 (S.D.N.Y. 2011) ("New York law governing overtime pay is defined and applied in the same manner as the FLSA.").

The district court addressed all three elements in resolving the summary judgment motions on the issue of liability. It is undisputed that the first element, regarding compensation, is satisfied here.[8] The district court also

---

[7] The prior version of the regulations had provided for a long and short test for the exemption. See Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008). The amendments were not intended to significantly change the exemption criteria. See Desmond I, 564 F.3d 688, 691 n.2 (4th Cir. 2009).

[8] The salary threshold of $455 per week equates to $23,660 per year. The starting annual salary of Samuel Calderon, named plaintiff in the FLSA claim, was $45,000 in 2009. The starting annual salary for Tom Fitzgerald, class representative in the NYLL claim, was $37,000 in 2000. We note that the Labor Department has recently proposed increasing the threshold to $921 per week (or $47,892 per year). See (Continued)

17

concluded that the second element (the "directly related element") was likely met. See Calderon, 917 F. Supp. 2d at 436-41. The court ruled, however, that the plaintiffs were entitled to partial summary judgment on the issue of liability because, as a matter of law, GEICO failed to establish the third element (the "discretion-and-independent-judgment element"). See id. at 441-44. In our view, the plaintiffs were entitled to summary judgment on the basis of the directly related element. It is therefore that element on which we focus our discussion.

The applicable Labor Department regulations shed some light on the meaning of the directly related element. They explain that "'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."[9] Id.

_____

http://www.dol.gov/whd/overtime/NPRM2015/factsheet.htm (last visited Dec. 22, 2015) (saved as ECF opinion attachment).

[9] 29 C.F.R. § 541.700(a) also provides:

Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative

(Continued)

Here, the summary judgment record clearly showed that the Investigators' primary duty was the investigation of suspected fraud, including reporting their findings. Unless the primary duty qualifies as "exempt work," the FLSA exemption relied upon by GEICO does not apply.[10] See id. ("To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work.").

---

freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

[10] GEICO notes that the Investigators also must make decisions regarding whether to make referrals to law enforcement or to the National Insurance Crime Bureau and whether to make referrals to GEICO's underwriting department so that an insured's rates may be adjusted when his policy comes up for review. GEICO also notes that Investigators sometimes process claim withdrawals when claimants decide to withdraw their claims. And they speak with law enforcement officials to discuss particular investigations and share information with other insurers. Even assuming that the administrative exemption would apply to an employee whose duties were primarily these, GEICO has pointed to nothing in the record that would support a conclusion that these responsibilities were any more than a minor part of the Investigators' jobs, either in their importance or in the amount of the Investigators' time that they occupy. See Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986) (holding that employer "bears the full burden of persuasion for the facts requisite to an exemption"); see also Schaefer v. Indiana Mich. Power Co., 358 F.3d 394, 403 (6th Cir. 2004) (holding that even though some of employee's duties appeared to satisfy the directly related element, the element was not satisfied where those duties were not part of his primary duty).

19

"The phrase 'directly related to the management or general business operations,'" within the context of the second element, "refers to the type of work performed by the employee."  29 C.F.R. § 541.201(a); see Desmond I, 564 F.3d at 693 ("Both the FLSA and its regulations make clear that an employee is exempt based on the type of work performed by that individual." (emphasis in original)).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a) (emphasis added).

The regulations provide examples of the type of work that is directly related to management or general business operations, explaining that qualifying work

> includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

20

29 C.F.R. § 541.201(b) (emphasis added).[11] And Labor Department comments to the applicable regulations explain that "the administrative operations of the business include the work of employees 'servicing' the business, such as, for example, 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.'" 69 Fed. Reg. at 22,138.

Because § 541.201(a) specifically identifies working on a manufacturing production line as an example of work that is not directly related to assisting with the running or servicing of a business, courts analyzing whether the directly related element has been satisfied have often focused their inquiry on whether the work is "production-type" work or analogous thereto. See, e.g., Desmond I, 564 F.3d at 694. Our court has explained that "[a]lthough the administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context, it is still a useful construct." Id. One reason that the dichotomy is imperfect is that while production-type work is not administrative, not all non-production-type work is administrative. See Martin v. Indiana Mich. Power Co., 381 F.3d 574, 582 (6th Cir. 2004) ("The regulations do not set up an

_____

[11] The regulation notes that "[s]ome of these activities may be performed by employees who also would qualify for another exemption." 29 C.F.R. § 541.201(b).

21

absolute dichotomy under which all work must either be classified as production or administrative."); Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1127 (9th Cir. 2002) ("Only when work falls 'squarely on the "production" side of the line,' has the administration/production dichotomy been determinative."). The regulation, after all, provides production work only as an example of work not directly related to assisting with the running or servicing of the business. Thus, in the end, the critical focus regarding this element remains whether an employee's duties involve "'the running of a business,'" Bratt v. County of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990), as opposed to the mere "'day-to-day carrying out of [the business's] affairs,'" Desmond I, 564 F.3d at 694 (citing Bratt, 912 F.2d at 1070).

We applied this test most recently in Desmond I. In that case, the plaintiff-employees worked as racing officials for a company that staged live horse races. Along with some clerical responsibilities, the employees ensured that the horses wore proper equipment and that a trainer or groom was positioned to saddle the horse and prepare it for the race; verified that the horses had the proper papers, tattoos, and test results; confirmed each jockey's presence and licensing; and determined the races' final outcomes. See id. at 690.

22

Despite the employer's contention that the officials were indispensable to its business, we concluded as a matter of law that their work was not "directly related to the management or general business operations of the employer." See id. at 692. We noted that the employees' indispensability was not dispositive because it was "'the nature of the work, not its ultimate consequence'" that was critical. Id. (quoting Clark v. J.M. Benson Co., 789 F.2d 282, 287 (4th Cir. 1986)). As for the nature of the work, we reasoned:

> Racing officials have no supervisory responsibility and do not develop, review, evaluate, or recommend Charles Town Gaming's business policies or strategies with regard to the horse races. Simply put, the [racing officials'] work did not entail the administration of–the "running or servicing of"–Charles Town Gaming's business of staging live horse races. The Former Employees were not part of "the management" of Charles Town Gaming and did not run or service the "general business operations." While serving as a Placing Judge, Paddock Judge, or performing similar duties is important to the operation of the racing business of Charles Town Gaming, those positions are unrelated to management or the general business functions of the company.

Id. at 694. We concluded that the employees' duties were "similar to those performed 'on a manufacturing production line or selling a product in a retail or service establishment,'" id. (quoting 29 C.F.R. § 541.201(a)), in that their employer produces live horse races and the employees' duties "consist[] of 'the day-to-day carrying out of [their employer's] affairs'

23

to the public, a production-side role," id. (quoting Bratt, 912 F.2d at 1070).

To the extent that the Investigators' work supports the claim-adjusting function, the Investigators, unlike the employees in Desmond I, are not production workers per se. See 69 Fed. Reg. at 22,145 ("[C]laims adjusters are not production employees because the insurance company is in the business of writing and selling automobile insurance, rather than in the business of producing claims." (internal quotation marks omitted)). But, like the employees in Desmond I, the Investigators' primary duty is too far removed from their employer's management or general business operations to satisfy the directly related element.

Their primary duty consists of conducting investigations to resolve narrow factual questions, namely whether particular claims submitted to GEICO were fraudulent. Like the racing officials in Desmond I, the Investigators have "no supervisory responsibility and do not develop, review, evaluate, or recommend [GEICO's] business polices or strategies with regard to the" claims they investigated. Desmond I, 564 F.3d at 694. Although their work is important to GEICO, the Investigators are in no way "part of 'the management' of [GEICO] and d[o] not run or service the 'general business operations.'" Id. Rather, by assisting the Claims Adjusters in processing the claims of

24

GEICO's insureds, the Investigators' duties simply "consist[] of 'the day-to-day carrying out of [GEICO's] affairs' to the public." Id.

The applicable regulations and Labor Department opinion letters support this interpretation. Specifically, they indicate that employees whose primary duty is to conduct factual investigations do not satisfy the directly related element, even when the work is of significant importance to the employer. For example, 29 C.F.R. § 541.3(b)(1) provides:

> The section 13(a)(1) exemptions and the regulations in this part . . . do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, <u>investigators</u>, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, . . . <u>who perform work such as</u> preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; <u>conducting investigations or inspections for violations of law</u>; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; <u>interviewing witnesses</u>; interrogating and fingerprinting suspects; <u>preparing investigative reports; or other similar work</u>.

29 C.F.R. § 541.3(b)(1) (emphasis added). Subsection 541.3(b)(3) explains that "[s]uch employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management

25

or general business operations of the employer or the employer's customers as required under § 541.200."

GEICO argues that this regulation, when read in context, should be interpreted as pertaining only to "public-sector law enforcement officers." Response and Reply Brief for Appellants/Cross-Appellees at 23. In support of its argument, which the district court agreed with, see Calderon, 917 F. Supp. 2d at 440, GEICO specifically notes that the Labor Department's stated purpose for adopting this provision was to clarify that "police officers, fire fighters, paramedics, EMTs and other first responders are entitled to overtime pay." 69 Fed. Reg. at 22,129 (emphasis added)); see Foster v. Nationwide Mut. Ins. Co., 710 F.3d 640, 644 (6th Cir. 2013). GEICO no doubt has correctly identified the Labor Department's motivation for including this clarifying regulation. See 69 Fed. Reg. at 22,129 ("This new subsection 541.3(b) responds to commenters, most notably the Fraternal Order of Police, expressing concerns about the impact of the proposed regulations on . . . first responders."). However, neither the Labor Department's comments nor the regulation itself suggest that the Labor Department intended to carve out some sort of special exception for first responders or otherwise treat workers performing similar work differently depending on whether they worked in the public or private sector. See 29 C.F.R. § 541.201(a) ("The phrase

26

'directly related to the management or general business operations' refers to the type of work performed by the employee." (emphasis added)); see Desmond I, 564 F.3d at 693 ("Both the FLSA and its regulations make clear that an employee is exempt based on the type of work performed by that individual." (emphasis in original)).

In fact, the Labor Department's comments to 29 C.F.R. § 541.3(b)(1) explain that the regulation was merely intended to reflect results that courts had already reached. See 69 Fed. Reg. at 22,129. Indeed, one of the three cases cited in the comments as supporting § 541.3(b)(1)'s application of the administrative exemption, Bratt, employed analysis very similar to that which we applied in Desmond I, analysis that seems to apply to the Investigators as well. In Bratt, the court considered whether the administrative exemption applied to employees of a county probation department who "conduct[ed] factual investigations of adult offenders or juvenile detainees and advise[d] the court on their proper sentence or disposition within the system." Bratt, 912 F.2d at 1069. Analogizing the sentencing courts' work to a business, the court rejected the notion that the employees could be characterized as "servicing" the business of the courts or "advising the management" regarding policy determinations such as how the business could be run more efficiently. Id. at 1070 (internal quotation marks

27

omitted).  Rather, the court concluded, the service that the probation officers provided the courts, namely, "providing information in the course of the customer's daily business operation[,] . . . d[id] not relate to court policy or overall operational management but to the courts' day-to-day production process."  Id.  Thus, the court determined that the probation officers' work did not directly relate to the management or general business operations of the employer.

A strong argument can be made that the Investigators' work in this case did not satisfy the directly related element for similar reasons.  It is of course true that while the primary duty of both the probation officers in Bratt and the Investigators before us was to conduct factual investigations and report their results, the information provided by the probation officers was put to a different use than is that of the Investigators before us.  Namely, the information in Bratt was used by courts to determine defendants' sentences, while the information in the present case is used by GEICO to assist the Claims Adjusters in the processing of insurance claims.  Nothing in the regulations demonstrates that this distinction would be dispositive, however.  As we have stated, the regulations' focus is on "the nature of the work, not its ultimate consequence," Desmond I, 564 F.3d at 692, and the nature of the Investigators' primary duty was not different in any significant way from that

of the probation officers. In neither case did the employees' actual work duties relate to business policy or overall operational management. Compare Shockley, 997 F.2d at 28 (holding that because "Ethics and Standards Lieutenant spent all her time accumulating and analyzing data and making recommendations that shaped the police department's policy with regard to internal discipline[, her work was] 'directly related to management policies.'"), and West v. Anne Arundel Cnty., 137 F.3d 752, 764 (4th Cir. 1998) (holding that EMS Training Lieutenants' position met criteria because the Lieutenants "develop[ed], coordinate[d], implement[ed,] and conduct[ed] EMS training programs[;] . . . prepare[d] lesson plans and training aids[;] supervise[d] delivery of training and tests[;] and evaluate[d] new equipment"), with Shockley, 997 F.2d at 28-29 (holding that Media Relations Sergeants did not meet exemption criteria when they "spent half their time on the 'crime line,' answering the phone, taking tips, and passing them on to the right department," and also "screen[ed] calls to the Chief of Police, respond[ed] to impromptu questions by the press, determin[ed] what information should be released to the press regarding ongoing investigations, and develop[ed] an ongoing news broadcast called 'Crime of the Week'"). Rather, the information the Investigators provided was used in GEICO's day-to-day processing of their employers' claims. Regardless of

29

whether this was "production work," it does not appear to be directly related to GEICO's management or general business operations.

Further supporting the conclusion that conducting factual investigations does not constitute exempt work is 29 C.F.R. § 541.203(j), which provides that the work of "[p]ublic sector inspectors or investigators of various types, such as fire prevention or safety, building or construction, health or sanitation, environmental or soils specialists and similar employees . . . typically does not involve work directly related to the management or general business operations of the employer."[12]   As with § 541.3(b)(1), the addition of this subsection was motivated by concerns relating to public employees.   See 69 Fed. Reg. at 22,147.   But also as with § 541.3(b)(1), there is no clear indication that the Labor Department, in promulgating the regulation, was doing anything other than applying generally applicable principles to the specifically enumerated jobs.

---

[12] The regulation also provides that "[s]uch employees also do not qualify for the administrative exemption because their work involves the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met." 29 C.F.R. § 541.203(j).

Several Labor Department letter opinions further support the view that conducting factual investigations, regardless of how important they are to the employer, is not directly related to management or general business operations.[13] Most prominently, a 2005 opinion letter considered whether the administrative exemption applied to investigators working for a company that had contracted with the U.S. government to perform "background investigations of potential government employees being considered for U.S. Government Secret and Top Secret security clearances." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA 2005-21, 2005 WL 3308592 (Aug. 19, 2005), at *1. Notwithstanding that the employees' work was critical to national security, that the investigators possessed significant discretion in determining how to conduct their investigations, and that they were called upon to make credibility determinations, the Labor Department concluded that their primary duty was "diligent and accurate fact-finding, according to [agency] guidelines, the results of which are turned over to [the agency,] who then makes a decision as to whether to grant or deny security clearances." Id. at *6. The Labor Department

---

[13] When a regulation is ambiguous, we defer to the agency's interpretation of the regulation in an opinion letter so long as it is not "'plainly erroneous or inconsistent with the regulation.'" D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs, 706 F.3d 256, 259-60 (4th Cir. 2013) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)).

determined that those activities "are more related to providing the ongoing, day-to-day investigative services, rather than performing administrative functions directly related to managing [the employer's] business." Id. And, the letter specifically noted the fact that "29 C.F.R. § 541.203(j) regard[s] public sector inspectors, investigators and similar employees, as employees whose duties have been found not to meet the requirements for the administrative exemption 'because their work typically does not involve work directly related to the management or general business operations of the employer.'" Id. at *7. Thus, the Labor Department determined that the investigators' "activities, while important, do not directly relate to the management or general business operations of the employer within the meaning of the regulations." Id. at *6.

The reasoning in this letter is similar to several other Labor Department opinion letters applying the pre-2004-amendment regulations to other investigators. See U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852783 (Apr. 17, 1998), at *2 (concluding that work of journeymen investigators in liquor industry "involve[d] the day-to-day 'production' functions of the employer rather than the management policies or general business operations of the employer"); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852752 (Jan. 23, 1998), at *2 (concluding that medical legal investigators

32

were "carrying out the employer's day-to-day affairs rather than running the business itself or determining its overall course and policies"); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 971811 (Sept. 12, 1997), at *3 (concluding that work of investigators who worked for a company that conducted background investigations of various types of employees that were used to determine the subjects' fitness for employment did not satisfy the directly related element because "the specific investigation activities . . . would appear to be more related to the ongoing day-to-day production operations of the firm than to [its] management policies or general business operations"; noting that the directly related element would not be satisfied "[e]ven if the investigators were viewed as performing staff operations of the firm's customers," such that the investigators would not be engaged in production activities, "because their work does not help shape or define the policies or operations of [the customer businesses] or affect their operations to a substantial degree"). We see nothing plainly erroneous concerning these interpretations, and we therefore defer to them, as we must. See D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs, 706 F.3d 256, 259-60 (4th Cir. 2013).

Notwithstanding the similarity between the nature of the Investigators' primary duty and that of the many jobs the regulations identify as not satisfying the directly related

33

element, GEICO maintains that the Investigators are nonetheless exempt because they perform some of the same duties that claims adjusters typically perform.[14]  In this regard, GEICO points to § 541.203(a), which states,

> <u>Insurance claims adjusters</u> generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, <u>if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; <u>negotiating settlements; and making recommendations regarding litigation</u>.

29 C.F.R. § 541.203(a) (emphasis added).

This regulation is of little help to us in our evaluation of whether the nature of the Investigators' work is directly related to management or general business operations.  As the regulation's language indicates, even for claims adjusters,[15] the question of whether they satisfy the directly related element is determined on a case-by-case basis and depends on their specific

---

[14] The district court's conclusion that the directly related element was likely satisfied was based in part on the fact that Investigators' work is used to assist GEICO claims adjusters in adjusting claims.  <u>See</u> <u>Calderon v. GEICO Gen. Ins. Co.</u>, 917 F. Supp. 2d 428, 441 (D. Md. 2012).

[15] "A job title alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."  29 C.F.R. § 541.2.

34

duties. See 69 Fed. Reg. at 22,144, 22,145 (emphasizing that the regulation "identifies the typical duties of an exempt claims adjuster" and noting that "there must be a case-by-case assessment to determine whether the employee's duties meet the requirement for exemption," including the directly related element); see also U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA 2005-2 (Jan. 7, 2005), at *2 ("[S]ection 541.203(a) simply provides an illustration of the application of the administrative duties test; it does not provide a blanket exemption for claims adjusters." Rather, "there must be a case-by-case assessment." (internal quotation marks omitted)).[16] The duties of the typical claims adjuster that the regulation describes are certainly much broader than those of the Investigators, and they include some duties that are unmistakably administrative, such as "negotiating settlements" and "making recommendations regarding litigation."[17] See 69 Fed.

_____

[16] The Labor Department over the years has consistently expressed the view that claims adjusters typically satisfy the requirements of the administrative exemption. See In re Farmers Ins. Exch., 481 F.3d 1119, 1128-29 (9th Cir. 2007) (reviewing prior regulations and opinion letters).

[17] That the Investigators do not have these duties distinguishes this case from many of those decisions that GEICO relies on in its argument that the directly related element is satisfied here. See Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 868-73 (7th Cir. 2008) (holding that administrative exemption covered material-damage appraisers responsible for "investigating auto accident damage, making repair or (Continued)

35

Reg. at 22,138 (noting that "the administrative operations of the business include the work of employees 'servicing' the business, such as, for example, 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control'" (emphasis added)). For this reason, it is hardly surprising that the work of a claims adjuster with those duties would be considered to be directly related to management or general business operations.

Although GEICO does not dispute that the Investigators' duties are significantly more narrow than those of the typical claims adjuster that the regulation describes, GEICO nevertheless argues that the fact that the Investigators' work is used to support the claims-adjusting function demonstrates that their work satisfies the directly related element. See Foster, 710 F.3d at 646 (holding that although the plaintiffs had only a subset of the duties listed in § 541.203(a), the directly related element was satisfied because the employees'

_____

replacement determinations, drafting estimates, and settling claims of up to $12,000 where liability has been established and coverage approved"); In re Farmers Ins. Exch., 481 F.3d at 1124 (holding that administrative exemption covered claims adjusters who "determine whether the loss is covered, set reserves, decide who is to blame for the loss and negotiate with the insured or his lawyer"); Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006) (per curiam) (holding that exemption covered adjusters who "advised the management, represented Allstate, and negotiated on Allstate's behalf").

36

"work remains integral to the claims adjusting function, is performed in partnership with the [claims adjusters], and involves making findings that bear directly on the [claims adjuster's] decisions to pay or deny a claim"). But this argument fails to take into account that it is "the nature of the work, not its ultimate consequence," that controls whether the exemption applies. Desmond I, 564 F.3d at 692; see 29 C.F.R. § 541.201(a) ("The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee." (emphasis added)). Were GEICO's reasoning correct, even "run-of-the-mine" jobs such as secretarial work that supported the claims-adjusting function could be found to be directly related to management policies or general business operations. But in fact such jobs do not generally satisfy this element.[18] See Clark, 789 F.2d at 287.

Regardless of how Investigators' work product is used or who the Investigators are assisting, whether their work is directly related to management policies or general business operations depends on what their primary duty consists of. And, as we have explained, the primary duty of the Investigators –

---

[18] Indeed, if the fact that an employee's work supported the claims-adjusting process demonstrated that the directly related element were satisfied, there would be no need to consider claims adjusters' duties on a case-by-case basis in deciding whether they satisfied that element.

conducting factual investigations and reporting the results – is not analogous to the work in the "functional areas" that the regulations identify as exempt. 29 C.F.R. § 541.201(b). It is, however, directly analogous to the work the regulations identify as not satisfying the directly related element. See 29 C.F.R. §§ 541.3(b)(1), 541.203(j). Accordingly, although the issue presents a very close legal question, we conclude that GEICO has not shown that the Investigators' primary duty is, plainly and unmistakably, directly related to GEICO's management or general business operations. We therefore hold that the district court correctly granted partial summary judgment to the plaintiffs on the issue of whether GEICO improperly classified the plaintiffs as exempt.[19]

### III. The plaintiffs' cross-appeal

#### A. Willfulness

The plaintiffs first argue in their cross-appeal that the district court erred in granting partial summary judgment to GEICO on the issue of willfulness under the FLSA. We disagree.

Under the Portal-to-Portal Act of 1947 (the "Portal Act"), 29 U.S.C. §§ 251-62, the length of the FLSA's statute of limitations depends upon whether the violation at issue was

---

[19] In light of our affirmance on the basis of the directly related element, we do not address the application of the discretion-and-independent-judgment element.

38

willful.  See 29 U.S.C. § 255(a); Perez v. Mountaire Farms, Inc., 650 F.3d 350, 375 (4th Cir. 2011).  If it is not willful, the limitations period is two years, but the period is three years for willful violations.  See 29 U.S.C. § 255(a); Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 357 (4th Cir. 2011) ("Desmond II").  "[O]nly those employers who either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] have willfully violated the statute."  Desmond II, 630 F.3d at 358 (internal quotation marks omitted).  And, negligence is insufficient to establish willfulness.  See id.  The question of whether an employer acted willfully is generally a question of fact.  See Martin v. Deiriggi, 985 F.2d 129, 136 (4th Cir. 1993).  The burden to establish willfulness rests with the employee.  See Perez, 650 F.3d at 375.

Here, the question of whether the Investigators are exempt was a close and complex one regarding two of the three elements of the applicable test.  Indeed, the Sixth Circuit in Foster v. Nationwide Mutual Insurance Company, faced with facts essentially identical to ours, concluded that the exemption applied.  See Foster, 710 F.3d at 644-50.  As evidence of willfulness, the plaintiffs point only to the memo that Rutzebeck prepared in conjunction with GEICO's 2004 review of the Investigators' exempt status.  However, Rutzebeck's

conclusion that the Investigators were not exempt was based on a court decision that GEICO's senior executives disagreed with, and there is no reasonable basis for any finding that GEICO's disagreement with that decision was reckless. In fact, the court decision was eventually reversed.

In any event, regardless of how GEICO made its exemption decision in 2004, GEICO reconsidered the issue anew in 2007 over a one- or two-month period and again concluded that the Investigators were correctly classified as exempt. As was true of the 2004 process, there is no evidence that any of the executives involved in the 2007 process made anything other than their best attempts to resolve this difficult exemption question, and we conclude that their decision to continue classifying the Investigators as exempt was a reasonable one. We therefore agree with the district court that there was no basis upon which a reasonable factfinder could conclude that GEICO's decision to classify its investigators as exempt was knowingly incorrect or reckless. Accordingly, the district court properly granted summary judgment on the issue to GEICO.

## B.   Regular Rate

The plaintiffs next challenge the method the district court used to calculate the compensation they were due for unpaid overtime.

The FLSA provides that an employer will be liable to its employees for a violation of the overtime pay requirement "in the amount of . . . their unpaid overtime compensation."[20]  29 U.S.C. § 216(b).  The method of calculating compensatory damages for lost overtime is established for mistaken-FLSA-exemption cases in which "the employer and employee had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked."  Desmond II, 630 F.3d at 354.  In such a case, "a court should divide the employees['] fixed weekly salary by the total hours worked in the particular workweek," producing the "regular rate" for a given workweek.  Id. (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579-80 (1942)).  The employee should then receive overtime compensation for each week in an amount no less than half of the regular rate for that week multiplied by the number of hours worked in excess of 40.  See id. at 354-57.

In challenging the method the district court employed for calculating damages, the plaintiffs simply maintain that there was a genuine factual dispute regarding whether they agreed to

---

[20] NYLL also provides such liability.  See N.Y. Lab. Law §§ 198(1-a); 663(1).

41

receive straight-time pay for all hours worked in a given workweek. We disagree.

Importantly, "an understanding [that the fixed weekly salary was compensation for all hours worked] may be 'based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan.'" Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997) (quoting Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1281 n.21 (4th Cir. 1996)). For many years without objection, although the plaintiffs did not always work the same number of hours in a day, they received fixed salaries that did not fluctuate depending on the number of hours they worked. On this basis, we conclude that the district court correctly determined that a reasonable jury could only find that the Investigators and GEICO came to understand that the Investigators were receiving straight-time pay for all hours worked in a given workweek. Although the plaintiffs claim that GEICO hired them with the understanding that they would be working only 38.75 hours per week, that does not negate the fact that the record establishes that, over time, they came to understand that any fluctuations that occurred in their hours from week to week would not affect the amount that they would be

42

paid.[21]  Accordingly, the district court correctly resolved the issue against the plaintiffs as a matter of law.

### C.  Liquidated Damages

The plaintiffs also contend that the district court abused its discretion by denying their request for liquidated damages under the FLSA and NYLL.  We disagree.

In addition to authorizing unpaid overtime award, the FLSA provides for an award of liquidated damages equal to the amount of compensation for unpaid overtime.  See 29 U.S.C. § 216(b). "Under the Portal Act, however, a district court, in its sound discretion, may refuse to award liquidated damages if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'"  Perez, 650 F.3d at 375 (quoting 29 U.S.C. § 260) (alteration in original).  This provision protects employers who violate the statute but "who

---

[21] Black v. SettlePou, P.C., 732 F.3d 492, 498 (5th Cir. 2013), on which the plaintiffs rely, is distinguishable.  In that case, the court noted that the plaintiff testified that she objected when she was not paid additional compensation for working additional hours and that such testimony tended "to show that she did not agree that her fixed weekly salary was intended to compensate her for all of the hours she worked each week." Id. at 501 (distinguishing case in which "the employee accepted her fixed weekly pay no matter how many hours she worked and never asked for any additional overtime pay").  The plaintiffs point to no such testimony in this case.

had reasonable grounds for thinking the law was other than it turned out to be." Thomas v. Howard Univ. Hosp., 39 F.3d 370, 373 (D.C. Cir. 1994). "[G]ood faith" and "reasonable grounds" are both measured objectively, see 29 C.F.R. § 790.22(c), and establishing either element is sufficient to satisfy the statute. See Mayhew, 125 F.3d at 220.

NYLL regarding the liquidated damages that could be awarded in addition to compensatory overtime underwent a change during the limitations period applicable to the state-law violations, which the parties stipulated was six years beginning on July 19, 2009. Prior to November 24, 2009, the law allowed for liquidated damages in the amount of 25 percent of the overtime underpayments in the event the employee could prove a willful violation. See N.Y. Lab. Law §§ 198(1-a), 663(1). Effective November 24, 2009, through April 8, 2011, liquidated damages in the amount of 25 percent of the overtime underpayments were allowed "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a); see N.Y. Lab. Law § 663(1) (similar). And effective April 9, 2011, the 25-percent amount was increased to 100 percent. See N.Y. Lab. Law §§ 198(1-a), 663(1).

The district court concluded that GEICO acted in good faith by reviewing the classification issue multiple times and that,

44

given the closeness of the issue, its decision to treat the Investigators as exempt was a reasonable one. We agree that the issue was a very close one, and we conclude that the district court was within its discretion in refusing to award liquidated damages under either the FLSA or NYLL.

## D. Prejudgment Interest

The plaintiffs finally argue that, in the absence of an award of liquidated damages, the district court abused its discretion in declining to award prejudgment interest on the basis that GEICO acted in good faith in treating its Investigators as exempt. We agree.

Although the FLSA does not explicitly provide for prejudgment interest, we have noted in the FLSA context that "[n]ormally, '[p]rejudgment interest is necessary, in the absence of liquidated damages, to make the [plaintiff] whole.'" Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1401 (4th Cir. 1990) (second alteration in original) (quoting Cline v. Roadway Express, 689 F.2d 481, 489 (4th Cir. 1982)); see Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 274 (3d Cir. 2010) ("Prejudgment interest [on a backpay award under the FLSA] attempts to compensate for the delay in receiving the wages as well as offset the reduction in the value of the delayed payments caused by inflation."). See also City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195 (1995) ("The

45

essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."). And we have held that "the decision whether to award interest is within the trial court's discretion." Dole, 899 F.2d at 1401; see Cline, 689 F.2d at 489 ("[W]e have indicated that the district court has discretion, based on the equities involved, in awarding or denying interest" in FLSA cases).

Nevertheless, "as is always the case when an issue is committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand." City of Milwaukee, 515 U.S. at 196 n.8. Because prejudgment interest on an FLSA overtime claim is compensatory rather than punitive, the fact that the defendant's decision not to treat the plaintiffs as exempt was reasonable or in good faith is not a valid basis for the denial of an award. See id. at 196-97; see First Nat'l Bank of Chicago v. Standard Bank & Trust, 172 F.3d 472, 480 (7th Cir. 1999) ("[T]he 'closeness' of a case is not material to the issue of prejudgment interest."). Accordingly, we reverse the district court's denial of prejudgment interest under the FLSA.

On the NYLL claims, we conclude that the plaintiffs were entitled to prejudgment interest as a matter of right and the district court thus did not have discretion to deny an award. "Where state law claims come before a federal court on

46

supplemental jurisdiction," as they do in this case, "the award of prejudgment interest rests on state law." Mills v. River Terminal Ry. Co., 276 F.3d 222, 228 (6th Cir. 2002). Accord Olcott v. Delaware Flood Co., 327 F.3d 1115, 1126 (10th Cir. 2003) ("Where state law claims are before a federal court on supplemental jurisdiction, state law governs the court's award of prejudgment interest."); Mallis v. Bankers Trust Co., 717 F.2d 683, 692 n.13 (2d Cir. 1983) ("Because the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction, state law applies to questions of prejudgment interest on the pendent claims in an action predicated upon violations of the federal securities laws."); cf. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999) ("[State] law governs the award of prejudgment interest in a diversity case."); Martin v. Harris, 560 F.3d 210, 220 (4th Cir. 2009) (explaining that "the allowance of prejudgment interest is a substantive provision").

On a NYLL wage claim, such as this one, an award of prejudgment interest is mandatory. Prior to 2011, the source of that statutory right was Section 5001 of New York's Civil Practice Law and Rules, which provides that prejudgment "[i]nterest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property."

47

N.Y.C.P.L.R. § 5001(a)[22]; see Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) ("Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the state's Labor Law."); see also Mallis, 717 F.2d at 693-94 (holding that "[i]n light § 5001(a)'s mandatory nature," even a failure to request such interest in the complaint or during trial does not constitute a waiver of the right to prejudgment interest under the statute). Effective April 9, 2011, New York also amended its statutes governing civil actions asserting wage claims to explicitly provide for awards of prejudgment interest. See N.Y. Lab. Law §§ 198(1-a), 663(1). Accordingly, with regard to the NYLL claims, the district court did not have discretion to decline to award prejudgment interest.

                                IV.

In sum, for the foregoing reasons, we reverse the district court's decision denying prejudgment interest under the FLSA and NYLL and remand so that the district court may award prejudgment interest. We otherwise affirm.

            AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

[22] The rule contains an exception for equitable actions, see N.Y.C.P.L.R. § 5001(a), but an action seeking damages for unpaid overtime is legal in nature, see Shannon v. Franklin Simon & Co., 43 N.Y.S.2d 442, 444 (N.Y. Sup. Ct. 1943).